IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LATONYA RACHELLE BENNINGS, | § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:18-cv-2599-L |
| UT SOUTHWESTERN MEDICAL CENTER, | § § § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff LaTonya Rachelle Bennings filed a *pro se* complaint against her former employer, Defendant University of Texas Southwestern Medical Center ("UT Southwestern"), *see* Dkt. Nos. 3 & 8, which, after screening and her filing an amended complaint, was ordered served, *see* Dkt. Nos. 7, 9, & 10.

UT Southwestern moved to dismiss Bennings's complaint under Federal Rule of Civil Procedure 12(b)(6), *see* Dkt. Nos. 15 & 16. And United States District Judge Sam A. Lindsay referred the motion to the undersigned United States magistrate judge under 28 U.S.C. § 636(b) for findings and recommendations. *See* Dkt. No. 17. Bennings filed a court-allowed out-of-time response. *See* Dkt. Nos. 18 & 19. And UT Southwestern filed a reply brief. *See* Dkt. No. 20.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion to dismiss and dismiss Bennings's complaint as amended without prejudice to her filing a second amended

complaint.

## Applicable Background

Liberally construing Bennings's complaint as amended, *see* Dkt. Nos. 3 & 8, she alleges retaliation, sex-based hostile work environment, and discrimination based on race.

Bennings alleges that she contacted a human resources representative on or about December 8, 2017 to complain that she was "sexually assaulted" by a co-worker and that, separately, her supervisor subjected her to "racist treatment." Dkt. No. 3 at 3. The sexual assault alleged consisted of the co-worker rubbing her leg on August 9, 2016; "grabb[ing] and squeez[ing her] behind" on August 30, 2016; and massaging her shoulders and grabbing her breast on September 26, 2016. *Id.* at 4.

The first incident alleged against the supervisor that could plausibly implicate racial discrimination occurred on October 12, 2015, when he asked another of Bennings's co-workers, in Bennings's presence, "what is the difference from a dark skin, light skin and brown skin black person?" and, after some discussion, the following exchange occurred:

> Then he says I understand why you don't like to get in the pool, because your hair will get as big as Michael Jackson afro but why are you worried about getting darker from the pool? What is the big deal Josh says? Then Jaclyn says we just don't want to be darker. Joshua sniggle a little then Joshua says, I use to be a waiter and every time I served a black family they would ask for a flavored drink like strawberry, or a grape drink. Why not Pepsi, Coke or Sprite? Then he said why are black people so scared to tell their family members how much money they spend on their dogs? Joshua proceeds to say your pets are like family members so why is it a big deal?

*Id.* at 6.

The next alleged incident involving the supervisor plausibly implicating race, occurring on June 17, 2016, was his asking Bennings her thoughts on a line from an O.J. Simpson documentary:

> Just as I was giving Eric the information on the doctor. Joshua starts talking about how he was watching OJ Simpson's documentary the night before. I didn't respond and Eric didn't either but then Joshua says OJ asked one of his friends "why are those N's with er on the end not N's with an a on the end in my backyard?["] I tried to talk over him by saying well I hope you guys have a good weekend. But then Joshua turns and ask me what do I think about that? I said to him I don't think about it at all because I don't care and don't think about OJ Simpson point blank!! Then I walked out!

*Id.* at 6-7.

Next, on June 30, 2016, during a meeting regarding Bennings's evaluation, the supervisor related to Bennings that an employee who used to work for him "was a black lady that wore shoes and jewelry that matched her wardrobe and all of that, (no importance at all) he told me that Wanda was still working for UT but works in a different department and maybe I should call her to see if she knows about any openings since she didn't fit there either." *Id.* at 7. Bennings also alleges that, after that meeting, the supervisor referred to her as "home girl/sister girl repeatedly." *Id.*

Then, on September 17, 2017, the supervisor asked Bennings who her favorite rapper was and then insisted that she sing a Tupac song with him. *See id.* at 7-8.

Following Bennings's December 8, 2017 meeting with HR, UT Southwestern emailed her, on January 12, 2018, the results of its internal investigation of her equal opportunity complaint – that it "was able to substantiate sufficient evidence to indicate

-3-

that [the co-worker's] behavior rose to the level of 'sexual misconduct'" but that it was "unable to determine [that the supervisor's] behavior rose to the level of discrimination or harassment as defined within [its] Institutional policies." *Id.* at 10.

Bennings filed two complaints with the EEOC. The first asserts race and sex discrimination and was filed on December 22, 2017. *See id.* at 11-12. The second, complaining of retaliation, but further repeating her allegations that she was sexually assaulted by a co-worker and subjected to racist treatment by her supervisor, alleges harm from December 8, 2017 to April 11, 2018 and was filed on September 13, 2018. *See id.* at 3.

## Legal Standards

In deciding motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). But a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible

on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project*, 920 F.2d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

Thus, the United States Supreme Court "has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

That rationale has even more force in this case, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *see United States v. Ayika*, 554 F. App'x 302, 308 (5th Cir. 2014) (per curiam) (a court has a "duty to construe *pro se* [filings] liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney"); *but see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("[L]iberal construction does not require that the Court or a defendant create causes of action where there are none.").

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted),

a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

While the United States Court of Appeals for "the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

## Analysis

I. <u>Sex-based Hostile Workplace</u>

"A hostile work environment based on sex may be a violation of Title VII" and

> occurs when the plaintiff proves she "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [sex]; (4) the harassment complained of affected a term,

> condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."

*Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)).

Related to this last element, Bennings's claims are based on a co-worker's actions, the last of which occurred on September 26, 2016. *See* Dkt. No. 3 at 3-4. But Bennings waited until December 8, 2017 to complain to human resource officials at UT Southwestern about these actions, *see id.*, at 3, and it was not until some two weeks later that she filed an EEOC complaint concerning these actions, *see id.* at 11-12 – before UT Southwestern notified her of the results of its investigation into her claim, *see id.* at 10.

Title VII claims "may only be adjudicated in federal court if the plaintiff exhausted [ ] administrative remedies in a timely manner." *Brown v. Jimmons*, Civ. A. H-15-2108, 2016 WL 4570758, at *2 (S.D. Tex. Aug. 31, 2016) (citing 42 U.S.C. § 2000e-5(e)(1); *Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 1994)). "[T]o exhaust administrative remedies" under Title VII, a plaintiff "must file a charge of discrimination with the EEOC within 180 days of the date of the alleged discrimination, or within 300 days of the alleged discrimination if he institutes his action with the appropriate state agency." *Owens v. Dallas Cnty. Cmty. Coll. Dist.*, No. 3:16-cv-3162-L, 2017 WL 3190727, at *2 (N.D. Tex. May 16, 2017) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996)), *rec. accepted*, 2017 WL 3172748 (N.D. Tex. July 26, 2017).

"The EEOC filing requirement functions as a statute of limitations rather than a jurisdictional prerequisite. It is a pre-condition to filing suit in district court, but it is not related to the subject matter jurisdiction of the court." *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 878 (5th Cir. 1991) (internal quotations and citation omitted); *see also Webb v. Cardiothoracic Surgery Assoc. of N. Tex.*, 139 F.3d 532, 537 (5th Cir. 1998) ("Congress intended the limitations period contained in Section 2000e-5(e)(1) to act as a statute of limitations." (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-94 (1982))).

"Under Title VII," then, "a discrimination claim not brought within 300 days of the alleged discriminatory act is time-barred" unless equitable tolling applies. *Lord v. Union Social Sector*, No. A-14-CV-235 SS, 2014 WL 1333250, at *3 (W.D. Tex. Apr. 1, 2014) (citations omitted), *rec. accepted*, 2014 WL 1761688 (W.D. Tex. Apr. 30, 2014). But "[e]quitable tolling applies to plaintiff's deadline for filing an EEOC charge only in extraordinary circumstances, such as where the parties have a pending case in the wrong forum, where plaintiff is unaware of the facts as a result of defendant's purposeful concealment, and where EEOC misleads plaintiff about the claim." *Deleon v. Gen. Insulation, Inc.*, 575 F. App'x 292, 293-94 (5th Cir. 2014) (per curiam) (citing *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (concluding that its precedent "leaves the door open to recognize other" bases for equitable tolling in this regard but recognizing that "[e]quitable tolling is to be applied 'sparingly'" and that "[t]he plaintiff has the burden to provide justification for" its application (citations omitted))); *see also Agenbroad v. McEntire*, 595 F. App'x 383, 389 (5th Cir. 2014) (per

-9-

curiam) ("Additionally, '[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify.'" (quoting *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006))).

In response to UT Southwestern's argument that Bennings's sex-based hostile work environment claim was not timely exhausted – because an administrative charge concerning this claim was filed months past 300 days after September 26, 2016, *see* Dkt. No. 16 at 11 – Bennings contends that, during her annual evaluation she informed her supervisor:

> I wasn't performing well in my job position because I was sexually assaulted by a co-worker that I didn't report last year. Mr. Liggin sat on this information for 4 months and neglected to report this incident to his superiors, so I was given no choice but to report the incident to HR myself.

Dkt. No. 19 at 1.

These allegations do not support a claim for equitable tolling under the extraordinary-circumstances standard. And, to the extent that she alleges that her supervisor prevented her from timely filing a complaint or EEOC charge, based on the amendment to Bennings's complaint, this meeting occurred on September 5, 2017, *see* Dkt. No. 8 at 5, more than one month past the 300-day deadline to file an EEOC charge, so the delay was of Bennings's own making. *See Wilson*, 442 F.3d at 875; *cf. Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 861 (7th Cir. 2005) (citing as a reason not to find equitable tolling that the plaintiff "brought his complaints about [ ] various employment actions to the attention of [employer's] Employment Opportunity supervisor before the expiration of the 300-day filing deadline").

This claim should therefore be dismissed as time-barred.

II.  Race Discrimination

Here, the allegedly discriminatory comments by her supervisor that support Bennings's race discrimination claim, even accepted as true for purposes of the motion to dismiss, "lack the indicia of specificity and causation required to be direct evidence of race discrimination." *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 273 (5th Cir. 2006) (per curiam) (citing *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996)); *see id.* ("The existence of racial animus scarcely appears in the form of statements that explicitly express an unlawful discriminatory intent. On such rare occasion, however, the plaintiff has brought forth evidence that clearly demonstrates an employer's discriminatory motive for its adverse employment action without any additional inferences or presumptions required by the court.").

Proving this claim will therefore depend on the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), under which a plaintiff must first show a prima facie case of discrimination before the case may proceed. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). To state a prima facie "Title VII violation based on race discrimination creating a hostile work environment," Bennings must allege that

> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted); *accord*

*Hernandez*, 670 F.3d at 651. And, "[i]f the harasser is plaintiff's [Title VII] supervisor, though, and not a co-worker, liability depends on certain other factors." *Spencer v. Schmidt Elec. Co.*, 576 F. App'x 442, 446 (5th Cir. 2014) (per curiam) (citing *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)); *see also Morrow v. Kroger Ltd. P'ship I*, 681 F. App'x 377, 380 (5th Cir. 2017) (per curiam)).

But the Court should not concern itself with those, other factors now, because the United States Court of Appeals for the Fifth Circuit has cautioned that a plaintiff need not make a showing of each prong of the prima facie test at the pleading stage. *See Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)).

"*Raj*, however, does not exempt a plaintiff from alleging facts sufficient to establish the elements of her claims." *Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) (per curiam) (citing *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) ("Although [the plaintiff] did not have to submit evidence to establish a prima facie case of discrimination at [the motion to dismiss] stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." (citations omitted))); *see also Jackai v. Affirmative Servs., Inc.*, No. 3:13-cv-3594-L, 2015 WL 264713, at *4 n.4 (N.D. Tex. Jan. 21, 2015) (noting, as to a motion to dismiss a *pro se* claim of hostile work environment, that, "[w]hile a plaintiff need not allege each of the elements of a prima facie case, he must set forth sufficient allegations from which the court can reasonably infer, assuming the allegations to be true, that Defendant could be liable for the misconduct

-12-

alleged").

The question for the Court now, then, is simply whether Bennings has provided sufficient facts to allege "a Title VII violation based on race discrimination creating a hostile work environment." *Ramsey*, 286 F.3d at 268; *see Swierkiewicz,* 534 U.S. at 512-13. And, if she "has not pled such facts," it is "proper[ to] dismiss" this claim. *Meadows*, 731 F. App'x at 318.

Focusing on her supervisor's comments that arguably have a racial element (set out above), Bennings has not alleged that these incidents – isolated in time, occurring over an almost two-year period, with some falling outside the 300 days preceding the filing of her first EEOC charge – were "sufficiently severe to alter the conditions of [her] employment and create an abusive working environment" and thus support a hostile-workplace claim based on race discrimination. *Hendricks v. Boy Scouts of Am.*, No. 3:15-cv-304-M, 2015 WL 5459612, at *3 (N.D. Tex. Sept. 16, 2015) (citing *Stone v. La. Dep't of Revenue*, 590 F. App'x 332, 340-41 (5th Cir. 2014) (per curiam)); *see also Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996) ("Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.").

This claim should therefore be dismissed.

III. <u>Retaliation</u>

"Title VII ... and the FMLA" – among other similar statutes – "all contain

provisions prohibiting retaliation for asserting the rights or enjoying the benefits under those statutes." *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014) (per curiam) (citations omitted).

"In the retaliation context, a prima facie case requires a showing that (1) [the plaintiff] engaged in a protected activity pursuant to one of the statutes, (2) an adverse employment action occurred, and (3) there exists a causal link connecting the protected activity to the adverse employment action." *Id.* (citation omitted); *accord Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017) (FMLA retaliation).

The adverse-employment-action prong "require[s] an 'ultimate employment decision' or its factual equivalent." *Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 396-97 (5th Cir. 2016) (per curiam) (citing *McCoy*, 492 F.3d at 560; *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014)). This "judicially-coined term refer[s] to an employment decision that affects the terms and conditions of employment ... such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson*, 764 F.3d at 503 (citations omitted).

So, for present purposes, Bennings need only allege facts, accepted as true, from which the Court may infer that, after engaging in statutorily-protected activity, she was subject to an adverse employment action.

Liberally construing Bennings's allegations, to the extent that she does allege a retaliation claim, the claim appears to be based on UT Southwestern's not transferring her to a different department to facilitate her return from leave taken under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). *See* Dkt.

No. 3 at 36 (explaining in her second EEOC charge that, "[o]n April 9, 2018, I was contacted by James Chamblee, who asked if I was going to return to work since my FMLA was about to expire. I submitted a medical note stating that I was not ready to return to work. I submitted my two weeks notice on April 11, 2018 because I could not return to work for the same Manager who I had filed a racist complained against Mr. Liggin had told my co-workers about the sexual assault that I had suffered.").

But Bennings fails to allege how the failure to transfer her internally amounted to an adverse employment action, much less one imposed because she took leave under the FMLA – or, if she alleges retaliation under Title VII, because she filed an internal complaint or EEOC charge.

By merely alleging that an internal transfer request was denied, without providing further facts to support an inference "that the denial of the transfer made her job 'objectively worse,'" Bennings fails to plausibly allege an adverse employment action. *Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-cv-4997-D, 2018 WL 1407288, at *4 (N.D. Tex. Mar. 21, 2018) (quoting *Wheat v. Fla. Parish Juv. Justice Comm'n*, 811 F.3d 702, 709 (5th Cir. 2016)); *see Wheat*, 811 F.3d at 709 ("[M]ere denial of a reassignment to a purely lateral position ('no reduction in pay and no more than a minor change in working conditions'), is typically not a materially adverse action." (citing *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (per curiam))); *see also Cooper v. Smithfield Packing Co., Inc.*, 724 F. App'x 197, 202 (4th Cir. 2018) (affirming dismissal of retaliation claim, noting that "[a] plaintiff must plausibly allege that the employer's response would dissuade a reasonable employee

from making or supporting a charge of discrimination. Cooper, by contrast, alleges *inaction* on the part of Smithfield" – its failing "'to transfer her or Lowery to work in other departments ... [and] continuing to allow Lowery to supervise her.'" "As pleaded, Cooper's employment status remained the same, as did her wages and terms of employment." (citations omitted)).

This claim should therefore be dismissed.

IV.     Further Leave to Amend

Although the Court required Bennings to amend her complaint prior to ordering service, given her *pro se* status, it is not clear that she has pleaded her best case, as the motion to dismiss was the first filing to specifically apprise her of the deficiencies in her complaint. *See Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam). As such, if the Court accepts or adopts these recommendations and grants the motion to dismiss, the undersigned recommends that the Court grant Bennings leave to file a second amended complaint within a reasonable time to be set by the Court.

**Recommendation**

The Court should grant Defendant University of Texas Southwestern Medical Center's motion to dismiss [Dkt. No. 15] and dismiss Plaintiff LaTonya Rachelle Bennings's *pro se* complaint as amended, *see* Dkt. Nos. 3 & 8, without prejudice to Bennings's filing a second amended complaint within a reasonable time to be set by the Court.

A copy of these findings, conclusions, and recommendation shall be served on all

parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 16, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE